# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEXBAY, LLC            CIVIL ACTION NO. 3:18-CV-00423 (VAB)
    Plaintiff,

V.

QBE INSURANCE CORPORATION      NOVEMBER 5, 2019
    Defendant.

## <u>PLAINTIFF'S LOCAL RULE 56(a)(2)</u><br><u>STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGEMENT</u>

Pursuant to Local Rule 56(a)(2), the Plaintiff, Alexbay LLC (hereinafter, "Alexbay") responds to the Defendant's Statement of Undisputed Material Facts as follows:

**<u>Background</u>**

1.     Allen Eber founded the family Eber Brothers business and Eber Bros. & Co. was the original entity he created. Kleeberg Lawsuit, Compl., ¶¶ 20-21, Ex. 1; Kleeberg Ans., ¶ 2, Ex. 2 ; L. Eber Trans., Pp. 9:2-9, Ex. 3.

**RESPONSE : Admitted .**

2.     Eber Bros. & Co. at one time ultimately owned all of the Eber Brother entities, including Eber Bros. Wine & Liquor Corp., which owned Eber Bros. Wine & Liquor Metro, Inc. L. Eber Trans., Pp. 9:23-10:10, 11:7-10, 12:9-17, Ex. 3.

**RESPONSE: Admitted.**

3.     Allen Eber created a trust to hold and manage the family business. Kleeberg Lawsuit, Compl., ¶¶ 20-21, Ex. 1; Kleeberg Ans., ¶ 2, Ex. 2.

**RESPONSE: Admitted.**

4.      Lester Eber owned one third of the trust while the remainder was owned by his two sisters, who have since died and left their interests to their children. Kleeberg Lawsuit, Compl., ¶ 24, Ex. 1; Kleeberg Ans., ¶ 2, Ex. 2.

**RESPONSE: Admitted.**

5.      In December 2011, Lester Eber formed Alexbay and he is its sole member, officer, director and employee. Alexbay Trans., Pp. 10:15-12:8, Ex. 4; Conn. Sec. of State, Ex. 5.

**RESPONSE: Admitted.**

### *Harris Beach, PLLC v. Eber Bros. Wine & Liquor Corp.*, Index No. 11-1436, NY Sup. Ct. Monroe County – ("HB 2011")

6.      On September 22, 2011, Harris Beach, PLLC ("Harris Beach") filed suit against Eber Bros. Wine & Liquor Corp. in the New York Supreme Court for Monroe County to collect unpaid fees, approximately $700,000, for Harris Beach's representation of Eber Bros. Wine & Liquor Corp. in a prior lawsuit. HB 2011 Compl., Ex. 6; *see* Alexbay Trans., Pp. 25:5-14, Ex. 4.

**RESPONSE: Admitted.**

7.      Harris Beach asserted 4 claims against Eber Bros. Wine & Liquor Corp.: (1) breach of contract, (2) account stated, (3) quantum meruit, and (4) unjust enrichment. HB 2011 Compl., Ex. 6.

**RESPONSE: Admitted.**

8.      In early 2014, Harris Beach obtained a judgment, which was later vacated. Jan. 29 Letter, Ex. 7; *see* Alexbay Trans., Pp. 25:23-26:4, 51:17-52:3, 129:7-11, Ex. 4.

**RESPONSE: Admitted.**

### *Alexbay v. Eber Bros. Wine and Liquor Corp. et al*, Index No. 2012-1919 – NY Sup. Ct. Monroe County – ("Alexbay 2012")

9.      On February 21, 2012, Alexbay filed suit against Eber Bros. Wine & Liquor Corp., Southern Wine & Spirits of America, Inc., Eber Bros. Wine & Liquor Metro, Inc. and John Doe seeking a judicial declaration that Alexbay's assumption of certain collateral was commercially

reasonable and in good faith. Alexbay 2012 Compl., Ex. 8; Alexbay Trans., Pp. 27:19-28:16, Ex. 4.

**RESPONSE: Admitted.**

10.      The complaint alleged that Lester Eber personally loaned money to Eber Bros. Wine & Liquor Corp. that was secured by all of Eber Bros. Wine & Liquor Corp.'s assets, which included the stock of Eber Bros. Wine & Liquor Metro, Inc., that Lester Eber assigned his interest in the security to Alexbay and that due to a default in payments Alexbay sought to obtain collateral pledged to secure the loan, which was the capital stock of Eber Bros. Wine & Liquor Metro, Inc. Alexbay 2012 Compl., ¶¶ 4-5, Ex. 8; *see* Alexbay Trans., Pp. 28:17-30:21, Ex. 4.

**RESPONSE: Admitted.**

11.      The complaint alleged a series of financial transactions leading to Alexbay seeking a judicial declaration that Alexbay's assumption of certain collateral by Alexbay was commercially reasonable and in good faith: (1) Oct. 1, 2002 – Lester Eber loaned Eber Bros. Wine & Liquor Corp. $575,895.00; (2) Aug. 15, 2005 – Lester Eber loaned Eber Bros. Wine & Liquor Corp. $1,503,750.00; (3) Oct. 2009 – Lester Eber extended a line of credit to Eber Bros. Wine & Liquor Metro, Inc. in the amount of $1,500,000.00; (4) Feb. 26, 2010 - Eber Bros. Wine & Liquor Corp. agreed to guarantee Eber Bros. Wine & Liquor Metro, Inc.'s obligations to Lester Eber; (5) Feb. 26, 2010 - Eber Bros. Wine & Liquor Corp. secured its guarantee to Lester Eber by proving a security interest in all its property; (6) Feb. 11, 2011 – Lester Eber, Eber Bros. Wine & Liquor Corp., and Eber Bros. Wine & Liquor Metro, Inc. entered into an agreement where Eber Bros. Wine & Liquor Metro, Inc. assumed all of Eber Bros. Wine & Liquor Corp.'s obligations to Lester Eber; and (7) Jan. 18, 2012 – Lester Eber assigned his interests in these agreements to Alexbay. Alexbay 2012 Compl., ¶¶ 9-24, Ex. 8; *see* Alexbay Trans., Pp. 31:10-32:21, Ex. 4.

**RESPONSE: Admitted.**

12.     The complaint alleged that Alexbay was willing to accept Eber Bros. Wine & Liquor Corp.'s stock in Eber Bros. Wine & Liquor Metro, Inc. in satisfaction of Eber Bros. Wine & Liquor Corp.'s obligations. Alexbay 2012 Compl., ¶ 25, Ex. 8; Alexbay Trans., Pp. 33:12-23, Ex. 4.

**RESPONSE : Admitted.**

13.     Alexbay alleged that Eber Bros. Wine & Liquor Metro, Inc. had no assets other than its 79% interest in Eber-Connecticut, LLC and that the value of that interest was $3.6 million dollars based on transactions involving Eber-Connecticut, LLC. Alexbay 2012 Compl., ¶¶ 30-40, Ex. 8.

**RESPONSE: Admitted.**

14.     Alexbay alleged that Polebridge Bowman, LLC's acquisition of 6% of Eber-Connecticut, LLC established that the value of one percent of Eber-Connecticut, LLC was worth $58,333.00, and that after accounting for a loss in value to Eber-Connecticut, LLC, Eber Bros. Wine & Liquor Metro, Inc.'s 79% ownership interest in Eber-Connecticut, LLC was worth approximately $3.6 million dollars. Alexbay 2012 Compl., ¶¶ 32-39, Ex. 8.

**RESPONSE: Admitted.**

15.     The court approved the declaration and in June 2013 Alexbay obtained the shares of Eber Bros. Wine & Liquor Metro, Inc., which included the controlling interest in Eber-Connecticut, LLC. Alexbay Trans., Pp. 37:16-38:23, 57:1-20 Ex. 4; HB 2014 Compl., ¶¶ 51-53, Ex. 9; Kleeberg Lawsuit, Compl., ¶¶ 47-48, Ex. 1; Kleeberg Lawsuit, Amend. Compl., ¶ 109, Ex. 10.

**RESPONSE : Admitted.**

16.     The Alexbay 2012 Lawsuit was filed to protect Lester Eber's personal investments. Alexbay Trans., Pp. 28:17-30:21, 31:10-32 :13, Ex. 4.

**RESPONSE: Admitted.**

### *Harris Beach, PLLC v. Eber Bros. Wine & Liquor Corp.*, Index. 2014-13623 – NY Sup. Ct. Monroe County – ("HB 2014")

17.     On December 11, 2014, Harris Beach filed a lawsuit against Eber Bros. Wine & Liquor

4

Corp., Inc., Alexbay, Eber Bros. Wine & Liquor Metro, Inc. and Eber-Connecticut, LLC. HB 2014 Compl., Ex. 9; Alexbay Trans., Pp. 46:18-47:20, 62:23-63:2, Ex.4.

**RESPONSE: Admitted.**

18.    The complaint alleged it had filed the HB 2011 Lawsuit, discussed above, and obtained a judgment in March 2014 against Eber Bros. Wine & Liquor Corp., Inc. that has not been paid. HB 2014 Compl., ¶¶ 23-27, Ex 9.

**RESPONSE: Admitted.**

19.    The complaint alleged multiple financial transactions between Lester Eber, Eber Bros. Wine & Liquor Corp. and Eber Bros. Wine & Liquor Metro, Inc. between 2005 and 2011, which were substantially similar to the transactions alleged in the Alexbay 2012 Lawsuit. HB 2014 Compl., ¶¶ 16-22, Ex. 9; Alexbay Trans., Pp. 48:22-50:4 Ex. 4; *see* Alexbay 2012 Compl., ¶¶ 9-24, Ex. 8.

**RESPONSE: Admitted.**

20.    The complaint alleged that in December 2011, only two and a half months after the HB 2011 Lawsuit was filed, Lester Eber formed Alexbay and filed the Alexbay 2012 Lawsuit. HB 2014 Compl., ¶¶ 28-36, Ex. 9; Alexbay Trans., Pp. 52:18-53:24, Ex. 4.

**RESPONSE: Admitted.**

21.    The complaint alleged that the Alexbay 2012 Lawsuit misrepresented to the court the value of the Eber Bros. Wine & Liquor Metro, Inc.'s shares. HB 2014 Compl., ¶ 39, Ex. 9; Alexbay Trans., Pp. 54:5-9, Ex. 4.

**RESPONSE: Admitted.**

22.    The complaint alleged that the transactions alleged in the Alexbay 2012 Lawsuit that were used to determine the value of Eber Bros. Wine & Liquor Metro, Inc., via the value of Eber-Connecticut, LLC, were not arms-length transactions and that Alexbay did not advise the court in the Alexbay 2012 Lawsuit of other transactions that would indicate the value of Eber Bros. Wine &

Liquor Metro, Inc. HB 2014 Compl., ¶¶ 40-50, Ex. 9.

**RESPONSE: Admitted.**

23.     The complaint alleged that the Polebridge Bowman Partners, LLC's acquisition of part of Eber-Connecticut, LLC was not a true arms' length transaction because its sole member and manager was Lester Eber's attorney. HB 2014 Compl., ¶¶ 40-44, Ex. 9.

**RESPONSE: Admitted.**

24.     The complaint alleged that the transfer of Eber Bros. Wine & Liquor Corp.'s interest in Eber Bros. Wine & Liquor Metro, Inc., and its ownership in Eber-Connecticut, LLC, to Alexbay rendered Eber Bros. Wine & Liquor Corp. insolvent. HB 2014 Compl., ¶ 53, Ex. 9.

**RESPONSE: Admitted.**

25.     The complaint asserted 4 causes of action under NY Debtor and Creditor Law claiming that the conveyance of Eber Bros. Wine & Liquor Metro, Inc.'s shares to Alexbay: (1) was fraudulent because the conveyance was not made in good faith and was not for a fair equivalent value, (2) was fraudulent because the conveyance was made without fair consideration and made when Eber Bros. Wine & Liquor Corp. was a defendant in an action for money damages, (3) was fraudulent and done with the actual intent to hinder, delay and defraud its creditors, and (4) that Harris Beach was entitled to fees because of fraudulent conveyance. HB 2014 Compl., ¶¶ 54-73, Ex. 9.

**RESPONSE: Admitted.**

26.     Alexbay's defense to the HB 2014 Lawsuit was that the Alexbay 2012 Lawsuit was proper and that a valid judgment was issued in that case. Alexbay Trans., Pp. 97:23-98:14, Ex. 4.

**RESPONSE: Admitted.**

***Pension Benefit Guaranty Corporation v. Eber Bros. Wine & Liquor Corp.*, Case No. 6:15-cv-06283 (WDNY) – ("PBGC Lawsuit")**

27.     On May 11, 2015, the Pension Benefit Guaranty Corporation brought suit against Eber Bros. Wine & Liquor Corp. seeking an order terminating its retirement plan. PBGC Compl., Ex. 11;

Alexbay Trans., Pp. 109:22-112:24, Ex. 4.

**RESPONSE: Admitted.**

28.     Alexbay, Eber Bros Wine & Liquor Metro, Inc., and Eber-Connecticut, LLC became

at issue in the PBGC Lawsuit because they were potentially liable under ERISA law. Alexbay Trans.,

Pp. 113:2-17, 114:12-20, 118:21-119:1, 120:14-121:13, 121:14-122:8, 122:20-123:16, 126:4-21, Ex.

4; *see* Reply to MSJ, Pp. 6-9, Ex. 12; PBGC Decision, Pp. 3-4, Ex. 13.

**RESPONSE: Admitted.**

**Settlement Conference**

29.     On January 19, 2015, counsel for Eber Bros Wine & Liquor Corp., Eber Bros Wine &

Liquor Metro, Inc., Eber-Connecticut, LLC, and Alexbay sent a letter to Judge Matthew Rosenbaum

in the New York Supreme Court regarding HB 2011 and HB 2014. Letter Jan. 29, 2015, Ex. 7;

Alexbay Trans., Pp. 127:21-129:5, Ex. 4; Att. Affirmation, Ex. 14.

**RESPONSE : Admitted.**

30.     The letter addressed the court order vacating the judgment against Eber Bros. Wine &

Liquor Corp. in the HB 2011 Lawsuit, motions to disqualify counsel in the HB 2014 Lawsuit, Harris

Beach's discussions with the PBGC about the alleged meritless fraudulent conveyance claims, and

how the court in the Alexbay 2012 Lawsuit approved the commercial reasonableness of the Alexbay

transaction. Letter Jan. 29, 2015, Ex. 7; Alexbay Trans., Pp. 130:5-133:23, Ex. 4.

**RESPONSE: Admitted.**

31.     At some point, Alexbay and Eber Bros. Wine & Liquor Metro, Inc. had a role in the

HB 2011 Lawsuit. Alexbay Trans., Pp. 26:14-17, 181:9-10, Ex. 4.

**RESPONSE: Admitted.**

32.     The Harris Beach lawsuits were settled. Alexbay Trans., Pp. 174:24-177:5, Ex. 4.

**RESPONSE: Admitted.**

***Kleeberg, et al v. Eber, et al*, Case No. 1:16-cv-09517 (SDNY) – ("Kleeberg Lawsuit")**

33.     On December 9, 2016, Daniel Kleeberg, Lisa Stein and Audrey Hays brought suit against Lester Eber, Alexbay, Canandaigua National Corporation, Elliot Gumaer, Eber Bros. & Co., Inc., Eber Bros. Wine & Liquor Corp., Eber Bros Wine & Liquor Metro, Inc., Eber-Connecticut, LLC and Wendy Eber. Kleeberg Lawsuit, Compl., Ex. 1; Alexbay Trans., Pp. 67:13-68:16, Ex. 34. Plaintiffs in this suit are Lester Eber's nieces and nephew. Alexbay Trans., Pp. 67:3:12, Ex. 4.

**RESPONSE: Admitted.**

34.     The complaint alleged that in 2012 Lester Eber transferred all of Eber Bros. remaining operating asset, Eber-Connecticut, LLC, to himself and concealed this from plaintiffs. Kleeberg Lawsuit, Compl., ¶¶ 2-3, Ex. 1; Alexbay Trans., Pp. 72:17-73:22, Ex. 4.

**RESPONSE: Admitted.**

35.     The complaint alleged that the Kleeberg Lawsuit sought damages for defendants' fraudulent concealment of Lester Eber's self-dealing. Kleeberg Lawsuit, Compl., ¶ 4, Ex. 1.

**RESPONSE: Admitted.**

36.     The complaint alleged, under the heading "The Sham 2012 Action", that Alexbay "brought a sham, uncontested lawsuit in order to obtain uncontested judicial approval of Eber W&L's [Eber Bros. Wine & Liquor Corp.'s] shares in Eber Metro [Eber Bros. Wine & Liquor Metro, Inc.] to Alexbay – and with them, the controlling interest in Eber-Conn d/b/a Slocum & Sons [Eber-Connecticut, LLC]." Kleeberg Lawsuit, Compl., ¶ 35, Ex. 1.

**RESPONSE: Admitted.**

37.     The complaint made allegations regarding the Alexbay 2012 Lawsuit, the financial transactions that formed the basis of the Alexbay 2012 Lawsuit, and attached a copy of that complaint. Kleeberg Lawsuit, Compl., ¶¶ 35-55, Ex. 1; Alexbay Trans., Pp. 78:5-7, 79:5-82:5, Ex. 4.

**RESPONSE: Admitted.**

38.     The complaint alleged that plaintiffs first learned about Eber-Connecticut, LLC's transfer, via Eber Bros. Wine & Liquor Metro, Inc., to Alexbay when they learned about the HB 2014 Lawsuit. Kleeberg Lawsuit, Compl., ¶¶ 61-62, Ex. 1; Alexbay Trans., Pp. 82:6-19, Ex. 4.

**RESPONSE: Admitted.**

39.     The complaint attached a copy of the HB 2014 Lawsuit. Kleeberg Lawsuit, Compl., ¶ 63, Ex. 1; Alexbay Trans., Pp. 82:20-83:25, Ex. 4.

**RESPONSE : Admitted.**

40.     The complaint alleged that the HB 2014 Lawsuit's "detailed allegations support the conclusion that the transfer of Eber-Conn to Lester was a fraudulent conveyance and that the 2012 Action [Alexbay 2012] attempted to rubber stamp the fraudulent conveyance. But the 2012 Action [Alexbay 2012] withheld from the court material facts indicating that Eber-Conn [Eber-Connecticut, LLC] was worth far more than the amount of the debt that was supposedly owed to Lester." Kleeberg Lawsuit, Compl., ¶ 64, Ex. 1.

**RESPONSE: Admitted.**

41.     The complaint alleged that "additional facts indicate that the Eber-Conn [Eber-Connecticut, LLC] transfer was fraudulent…." Kleeberg Lawsuit, Compl., ¶ 67, Ex. 1.

**RESPONSE: Admitted.**

42.     The complaint then explicitly incorporated the allegations in paragraphs 16-60 from HB 2014's complaint "as if fully set forth herein…." Kleeberg Lawsuit, Compl., ¶ 68, Ex. 1; Alexbay Trans., Pp. 84:6-86:17, Ex. 4.

**RESPONSE: Admitted.**

43.     The complaint asserted 4 claims against defendants: (1) breach of fiduciary duty predicated on the diversion of corporate assets by transferring assets to Alexbay, (2) fraudulent concealment regarding not informing Plaintiffs about the Alexbay 2012 Lawsuit, (3) aiding and

abetting breach of fiduciary duty against Alexbay for the Alexbay 2012 Lawsuit, and (4) for an accounting of the trust's assets. Kleeberg Lawsuit, Compl., ¶¶ 70-117, Ex. 1; *see* Alexbay Trans., Pp. 86:18-87:5, Ex. 4.

**RESPONSE: Admitted.**

44.     On March 10, 2017, defendants Lester Eber, Alexbay, Eber Bros. & Co., Inc., Eber Bros. Wine & Liquor Corp., Eber Bros. Wine & Liquor Metro., Inc., Eber-Connecticut, LLC and Wendy Eber answered the original complaint. Kleeberg Ans., Ex. 2.

**RESPONSE: Admitted.**

45.     On June 18, 2019, plaintiffs filed their third amended complaint. Kleeberg Lawsuit, Amend. Compl., Ex. 10; Alexbay Trans., Pp. 98:15-102:18, Ex. 4.

**RESPONSE: Admitted.**

46.     The third amended complaint alleged that the Polebridge Bowman Partners, LLC transaction that was used to value Eber Bros. Wine & Liquor Metro, Inc. where it purchased six percent of Eber-Connecticut, LLC, was a "roundtrip transaction with no real economic substance; in other words, a sham." Kleeberg Lawsuit, Amend. Compl., ¶¶ 94, 128, Ex. 10.

**RESPONSE: Admitted.**

47.     The third amended complaint contained multiple allegations about what the Alexbay 2012 Lawsuit alleged and its resolution. Kleeberg Lawsuit, Amend. Compl., ¶¶ 102-112, Ex. 10.

**RESPONSE: Admitted.**

48.     The third amended complaint contained multiple allegations regarding alternative bases for estimating the value of Eber-Connecticut, LLC and how this information was not disclosed in the Alexbay 2012 Lawsuit. Kleeberg Lawsuit, Amend. Compl., ¶¶ 127-130, Ex. 10.

**RESPONSE: Admitted.**

49.     The third amended complaint contained multiple details about the transfer of Eber

Bros. Wine & Liquor Metro, Inc. to Alexbay and many of the financial transactions that were the basis for the Alexbay 2012 Lawsuit. Kleeberg Lawsuit, Amend. Compl., ¶¶ 134-156, Ex. 810.

**RESPONSE: Admitted.**

50.    The third amended complaint again alleged that plaintiffs first learned about the transfer of Eber-Connecticut, LLC, via Eber Bros. Wine & Liquor Metro, Inc. to Alexbay when they learned about the HB 2014 Lawsuit, which was labeled the "fraudulent Conveyance Action." Kleeberg Lawsuit, Amend. Compl., ¶¶ 162-164, Ex. 10; Alexbay Trans., Pp. 107:13-108:1, Ex. 4.

**RESPONSE: Admitted.**

51.    The third amended complaint attached a copy of the HB 2014 Lawsuit as an exhibit. Kleeberg Lawsuit, Amend. Compl., ¶ 164, Ex. 10; Alexbay Trans., Pp. 107:13-108:1, Ex. 4.

**RESPONSE: Admitted.**

52.    The third amended complaint reiterated the HB 2014 Lawsuit's "detailed allegations support the conclusion that the transfer of Eber-CT [Eber-Connecticut, LLC] to Lester was a fraudulent conveyance and that the Foreclosure Action [Alexbay 2012] attempted to rubber stamp the fraudulent conveyance. But the Foreclosure Action [Alexbay 2012] withheld from the court material facts indicating that Eber-CT [Eber-Connecticut, LLC] was worth far more than the amount of the debt that was supposedly owed to Lester." Kleeberg Lawsuit, Amend. Compl., ¶ 165, Ex. 10.

**RESPONSE: Admitted.**

53.    The third amended complaint then explicitly incorporated paragraphs 16-60 from HB 2014's complaint "as if fully set forth herein...." Kleeberg Lawsuit, Amend. Compl., ¶ 170, Ex. 10.

**RESPONSE: Admitted.**

54.     The first count of the third amended complaint was for breach of fiduciary duty for multiple acts of alleged misconduct, primarily including conduct related to the Alexbay 2012 Lawsuit. Kleeberg Lawsuit, Amend. Compl., ¶¶ 178-272, Ex. 10; Alexbay Trans., Pp. 194:3-21, Ex. 4.

**RESPONSE: Denied with respect to the use of the word "primarily" to characterize the allegations. The Third Amended Complaint speaks for itself. <u>See</u> QBE's Exhibit 10. Otherwise, admitted.**

55.     The second count alleged breach of fiduciary duty based on a faithless servant. Kleeberg Lawsuit, Amend. Compl., ¶¶ 273-293, Ex. 10.

**RESPONSE: Admitted.**

56.     The third count alleged unjust enrichment. Kleeberg Lawsuit, Amend. Compl., ¶¶ 294-296, Ex. 10.

**RESPONSE: Admitted.**

57.     The fourth count sought to set aside 7 unlawful transactions, many of which were the basis of Alexbay 2012 Lawsuit. Kleeberg Lawsuit, Amend. Compl., ¶¶ 297-330, Ex. 10.

**RESPONSE: Denied with respect to the use of the words "unlawful" to characterize "transactions" and "many" to characterize a quantity. The Third Amended Complaint speaks for itself. <u>See</u> QBE's Exhibit 10. Otherwise, admitted.**

58.     The fifth count demanded new elections for Eber Bros. & Co. and Eber Bros. Wine & Liquor Corp. Kleeberg Lawsuit, Amend. Compl., ¶¶ 331-342, Ex. 10.

**RESPONSE: Admitted.**

59.     The sixth count sought a declaratory judgment that Lester Eber delayed and interfered with Plaintiffs' ability to establish title to Eber Bros. & Co.'s shares and that he now must take all

steps to enable Plaintiffs to establish title and exercising their legal rights. Kleeberg Lawsuit, Amend. Compl., ¶¶ 343-352, Ex. 10.

**RESPONSE: Admitted.**

60.     The seventh count asserted a claim for fraudulent concealment primarily for failing to disclose the Alexbay 2012 Lawsuit and the transfer of the shares in Eber Bros. Wine & Liquor Metro. Kleeberg Lawsuit, Amend. Compl., ¶¶ 353-371, Ex. 10.

**RESPONSE: Admitted.**

61.     The eighth count asserted a claim for aiding and abetting breach of fiduciary duty and fraudulent concealment. Kleeberg Lawsuit, Amend. Compl., ¶¶ 372-377, Ex. 10.

**RESPONSE: Admitted.**

62.     The ninth count sought an accounting of profits for all entities, including Alexbay. Kleeberg Lawsuit, Amend. Compl., ¶¶ 378-387, Ex. 10.

**RESPONSE: Admitted.**

63.     The tenth count sought common law indemnification. Kleeberg Lawsuit, Amend. Compl., ¶¶ 388-397, Ex. 10.

**RESPONSE: Admitted.**

64.     Alexbay's defense to the Kleeberg Lawsuit was that the Alexbay 2012 Lawsuit was proper and that a valid judgment was issued in that case. Alexbay Trans., Pp. 91:8-93:15, Ex. 4.

**RESPONSE: Denied with respect to the use of the word "defense" as singular. Alexbay asserted numerous defenses to the Kleeberg Lawsuit. See QBE's Exhibit 2.**


**Insurance Policy**

65.     QBE issued Alexbay a management liability policy with a policy period of March 31, 2016 to March 31, 2017 bearing policy number QPL0192783 ("Policy"). Policy, Ex 15. The attached

Policy is a true and accurate copy. Aff. Of Kevin Lawrence, Ex. 16.

**RESPONSE: Admitted.**

66.     The relevant section of the Policy are as follows:

\*\*\*

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

\*\*\*

**VIII.      TREATMENT OF RELATED CLAIMS**

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.
\*\*\*
**XXII.      GLOSSARY**
\*\*\*
O.     **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts.**

\*\*\*

*The Solution* **for Directors & Officers and Entity Liability Coverage Part Declarations**

\*\*\*

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**
\*\*\*

*The Solution* **for Private Company Directors & Officers and Entity Liability Coverage Part**

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:
\*\*\*
**X.      GLOSSARY**

A. **Claim** means:

1. With respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

2. With respect to Insuring Clauses A, B and C:

   (a) A written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

   (b) A civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

   (c) A formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.
\*\*\*
J.   **Wrongful Act** means:

1. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2. Any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.
   \*\*\*
**POLICY NUMBER: QPL0192783**
**Effective Date of Endorsement: March 31, 2016   QBBPP-2097 (05-14)**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SPECIFIC LITIGATION EXCLUSION
\*\*\*
No coverage shall be provided for any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of or resulting from any notice, litigation, investigation, prosecution, adjudication, or proceeding described below ("Litigation").

All matters identified on AIG Loss Run Report Dated March 2, 2016;
PBGC complaint filed against Eber Bros. Case 6:15-cv-06283

All other terms and conditions of this Policy remain unchanged.

**RESPONSE: Admitted.**

67.     The AIG Loss Run Report Dated March 2, 2016 ("Loss Runs") identified the HB 2011, HB 2014, and PBGC lawsuits. Loss Runs, Ex. 17; Alexbay Trans., Pp. 143:5-21, 144:14-22, 145:20-24, Ex. 4. The attached Loss Runs are a true and accurate copy Aff. Of Kevin Lawrence, Ex. 16.

**RESPONSE: Admitted.**

68.     On February 14, 2017, QBE denied coverage for the Kleeberg Lawsuit. Ltr, Ex. 18. The attached letter is a true and accurate copy. Aff. Of Kevin Lawrence, Ex. 16.

**RESPONSE: Admitted.**

## ADDITIONAL MATERIAL FACTS

1.  Lester Eber's loans, which formed the basis of the Alexbay lawsuit, prevented the liquidation of the Eber family business. See Excerpts of Transcript of Alexbay LLC, attached hereto as Exhibit 1.

2.  The allegations set forth in the 2014 Harris Beach Lawsuit were based on speculation and assumptions. See QBE's Exhibit 12, at Exhibit1.


THE PLAINTIFF,

        /s/ Anne Murdica
Anne Murdica (ct30541)
Secor, Cassidy & McPartland, P.C.
41 Church Street
Waterbury, CT 06702
Phone: 203-757-9261
Fax: 203-756-5762
Email: amurdica@ctlawyers.com

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing, and all attachments and exhibits appended thereto, was sent on this date via U.S. Mail or electronically delivered to all counsel and self-represented parties of records and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were electronically served:

Attorney Michael F. Lettiero
Gerber Ciano Kelly Brady, LLP
175 Capital Boulevard, Floor 4
Rocky Hill, CT 06067

November 5, 2019


    /s/ Anne Murdica
Anne Murdica

# Exhibit 1

1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
2

3

4    Case No.:  18-cv-00423-VAB

5    - - - - - - - - - - - - - - - - - -X
     ALEXBAY LLC,                        :
6                        Plaintiff       :
                                         :
7    VS                                  :
                                         :
8    QBE INSURANCE CORPORATION,          :
                         Defendant       :
9    - - - - - - - - - - - - - - - - - -X

10

11

12

13          Deposition of LESTER EBER (on behalf of
     Alexbay) taken at the offices of Gerber Ciano Kelly
14   Brady, LLP, 175 Capital Blvd., 4th Floor, Rocky
     Hill, Connecticut, before Clifford Edwards, LSR,
15   Connecticut License No. SHR.407, a Professional
     Shorthand Reporter and Notary Public, in and for the
16   State of Connecticut on August 6, 2019, at 10:05
     a.m.

17

18

19

20

21

22

23

24

25

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
 1   A P P E A R A N C E S :

 2   ON BEHALF OF THE PLAINTIFF:

 3   ANNE MURDICA, ESQ.
     THOMAS G. PARISOT, ESQ.
 4   SECOR, CASSIDY & MCPARTLAND, P.C.
     41 Church Street
 5   Waterbury, CT 06702
     203.757.9261
 6   amurdica@ctlawyers.com
     TGP@ctlawyers.com
 7

 8   ON BEHALF OF THE DEFENDANT:

 9   MICHAEL F. LETTIERO, ESQ.
     GERBER CIANO KELLY BRADY, LLP
10   175 Capital Boulevard, Floor 4
     Rocky Hill, Connecticut  06067
11   mlettiero@gerberciano.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              S T I P U L A T I O N S

2              IT IS HEREBY STIPULATED AND AGREED by and

3    between counsel representing the parties that each

4    party reserves the right to make specific objections

5    at the trial of the case to each and every question

6    asked and of the answers given thereto by the

7    deponent, reserving the right to move to strike out

8    where applicable, except as to such objections as

9    are directed to the form of the question.

10             IT IS FURTHER STIPULATED AND AGREED by and

11   between counsel representing the respective parties

12   that proof of the official authority of the Notary

13   Public before whom this deposition is taken is

14   waived.

15             IT IS FURTHER STIPULATED AND AGREED by and

16   between counsel representing the respective parties

17   that the reading and signing of this deposition by

18   the deponent is not waived.

19             IT IS FURTHER STIPULATED AND AGREED by and

20   between counsel representing parties that all

21   defects, if any, as to the notice of the taking of

22   the deposition are waived.

23             Filing of the Notice of Deposition with

24   the original transcript is waived.

25

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1                    INDEX OF EXAMINATION

2                                                           PAGE

3   DIRECT EXAMINATION BY MR. LETTIERO                        7

4   CROSS-EXAMINATION BY MS. MURDICA                        174

5   REDIRECT EXAMINATION BY MR. LETTIERO                    176

6

7                    INDEX OF EXHIBITS

8   Defendant's                                            PAGE

9   No. 1, Document                                          9

10  No. 2, Complaint by Harris Beach vs. Eber

11      Brothers Wine and Liquor Corporation

12      filed on September 23rd 2011                         23

13  No. 3, complaint by Alexbay vs. Eber Brothers

14      Wine and Liquor Corporation, Southern

15      Wine and Spirits of America, Inc.,

16      Eber Brothers Wine and Liquor Metro,

17      Inc., and John Does 1 through 10                     27

18  No. 4, An Affidavit of Lester Eber in

19      Support of a Motion for Judicial

20      Determination in the Alexbay Case                    41

21  No. 4A, Last Page of Exhibit 4 Including

22      Signature                                            65

23

24

25

1

INDEX OF EXHIBITS

2

(continued)

3

4  Defendant's                                           PAGE

5  No. 5, Lawsuit Filed by Harris Beach in 2014

6      Against Eber Brothers Wine and Liquor

7      Corp; Alexbay, f/k/a Lester Eber, LLC;

8      Eber Brothers Wine and Liquor Metro;

9      and Eber-Connecticut, LLC                            46

10  No. 6, Lawsuit Filed by Daniel Kleeberg,

11      Lisa Stein, and Audrey Hayes                         65

12  No. 7, Copy of the Third Amended Complaint

13      in the Kleeberg Lawsuit                              93

14  No. 8, Complaint Filed by the Pension

15      Benefit Guaranty Corporation Against

16      Eber Brothers Wine and Liquor Corporation           110

17  No. 9, Defendant's Reply and Further Support

18      of its Motion for Summary Judgment in

19      the Pension Benefit Guaranty Litigation             117

20  No. 10, Lawsuit of the Pension Benefit

21      Guaranty Corporation Against Eber

22      Brothers                                            122

23

24

25

1                         INDEX OF EXHIBITS

2                            (continued)

3

4    Defendant's                                    PAGE

5    No. 11, Letter from Bond, Schoeneck &

6         King Dated January 29, 2015               127

7    No. 12, February 14, 2017 Letter From QBE

8         to Alexbay
                                                    134
9    No. 13, Complaint by Alexbay versus

10        QBE Insurance Corporation                 155

11   No. 14, Copy of the Policy that QBE

12        Allegedly Issued to Alexbay               157

13

14

15   (Reporter's Note:  Exhibits retained by Mr.

16   Lettiero.)

17

18

19

20

21

22

23

24

25

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1                    LESTER EBER

2   of 30 Corporate Drive, North Haven, Connecticut

3   06473, having first been duly sworn, deposed and

4   testified as follows:

5

6                    DIRECT EXAMINATION

7

8   BY MR. LETTIERO:

9        Q     Good morning, Mr. Eber.  I'm going to

10  make sure I am going to pronounce that correctly the

11  whole time.  Thank you for coming in today.  So

12  today we are going to be deposing you in the matter

13  of Alexbay vs. QBE.

14              Do you understand that?

15       A     Yes.

16       Q     Okay.  And so I'm going to give you a

17  couple rules just so we are clear about how the

18  deposition will proceed today.  If you do not

19  understand my question, please let me know.

20              If you don't say anything, I'm going to I

21  assume that you understood what I asked; okay?

22       A     (The witness nods head.)

23       Q     As you can tell, a court reporter is

24  taking down everything you say, so please answer

25  audibly.

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
 1      A      Well, they're -- in here, you see the
 2  different amounts of notes of money that I lent the
 3  company.
 4      Q      Okay.
 5      A      To lent Eber Wine and Liquor and
 6  different entities along the way to keep them out of
 7  liquidation.
 8      Q      Okay.  So let's just -- I want to make
 9  sure I understand this.
10             At the time this lawsuit was filed, did
11  Alexbay have an ownership interest in Eber Brothers
12  Wine and Liquor Metro?
13             Because earlier today, we talked about
14  how Alexbay owns Eber Brothers Wine and Liquor
15  Metro; correct?
16      A      Well, it -- it -- it does -- it does have
17  a relationship now.  It did -- it -- the money was
18  lent to Eber Brothers Metro or Eber Wine and Liquor.
19  I can't remember which entity.  And then Alexbay
20  foreclosed on those loans to protect the money that
21  was owed.
22      Q      Okay.  So let me just give a -- try to
23  summarize that.
24             You, Lester Eber, loaned money to the
25  entities named in this suit?
```

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1     Q     Okay.  Which would include Alexbay?

2     A     It would include you, if he was alive.

3     Q     Well, I hope he wouldn't have much to say

4  about me, but understood.

5           We talked about Eber Brothers and

6  Company, Eber Brothers Wine and Liquor Corporation,

7  Eber Brothers Wine and Liquor Metro, Eber Brother,

8  Eber-Connecticut, and Wendy Eber.

9           Now, at the time this lawsuit was filed,

10  it was filed in 2016; correct?

11     A     Yes.

12     Q     Alexbay owned Eber-Metro, and through

13  Eber-Metro, Eber-Connecticut; correct?

14     A     Yes.

15     Q     Okay.  What was the basis of the claims

16  by Kleeberg, Stein, and Hayes?

17     A     Fiduciary duties regarding the trust.

18     Q     Okay.  Could you be more specific?

19           What were they claiming?

20           What about the fiduciary duties and the

21  trust?

22     A     They are contesting what the trust --

23  that the trust should have notified them as

24  potential beneficiaries, but under my father's will,

25  it wasn't necessary.

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1              Was that Eber-Connecticut?

2      A     Yes.

3      Q     Okay.  So -- and they don't -- I don't

4  believe they define Eber Brothers any more

5  specifically than this.

6              Does this paragraph refer to the transfer

7  of the ownership of Eber-Connecticut in 2012?

8      A     I think it refers to that there was a

9  change in ownership that, because of -- the company

10 was facing liquidation, and I had lent it

11 considerable amounts of money --

12     Q     Uh-huh.

13     A     -- paid off many, many obligations that I

14 was not personally liable for, and I was protecting

15 the money that I was owed.

16     Q     But --

17     A     And that's what it was all about.

18     Q     Okay.  But the specific transfer at issue

19 here, the distributorship in Connecticut, does that

20 refer, to your knowledge, to Eber-Connecticut?

21     A     Yeah, the distributorship in Connecticut

22 is Eber-Connecticut.  There isn't anything else.

23     Q     Okay.  That's what I -- I want to be

24 clear.

25             There's no other Eber entities that

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
 1   Brothers --
 2       A     Yeah.
 3       Q     -- Wine and Liquor Metro.
 4       A     That's correct.
 5       Q     Okay.  So would paragraph 36 of Exhibit 6
 6   refer to the lawsuit in Exhibit 3?
 7       A     Yeah.  It's -- it's -- yes.
 8       Q     Okay.  Well, you mentioned something
 9   about this referencing the lawsuit where Southern
10   was paid off some debts.
11             Is that a separate lawsuit or are you
12   thinking of the same one as Exhibit --
13       A     It's the same one --
14       Q     Okay.
15       A     -- that they acknowledged that they got
16   paid --
17       Q     Okay.
18       A     -- for everything.  I paid -- we paid
19   them off for all the monies they lent us.
20       Q     Okay.  All right.
21       A     Otherwise, it would have been liquidated.
22       Q     Okay.  And that all was addressed in
23   Exhibit 3, the Alexbay lawsuit, in 2012?
24             Exhibit 3 in your hand.
25       A     Yes.
```

1     Q     Uh-huh.

2     A     And I -- there's checks and everything to

3  back it up.

4     Q     Understood.

5     A     It's all legitimate monies that were

6  loaned, and if it wasn't loaned, the company would

7  have been liquidated.

8     Q     Understood.  Are -- these transactions in

9  paragraph 49, do you know whether they are the same

10  or similar to the ones alleged, that Alexbay itself

11  alleged, in 2012?

12     A     No.

13     Q     Okay.  If we look back at Exhibit No. 3,

14  page 3 paragraph 9.

15     A     Yeah.  Yes.

16     Q     That talks about a loan on or about

17  October 1, 2002, in the amount of $575,895?

18     A     Yes.

19     Q     Okay.  Is that loan the same as alleged

20  in paragraph 49A of Exhibit 6?

21     A     Yes.

22     Q     Okay.  Is there any reason to believe

23  that the rest of these transactions in paragraph 49

24  of Exhibit 6 are not allegations that were taken

25  directly from Alexbay 2012, the complaint in that

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1      Q      And Eber-Connecticut have counsel?

2      A      Yes.

3      Q      Are they the same counsel for --

4      A      Yes.

5      Q      Okay.  Well, let me finish my question.

6             The same counsel for Alexbay, Eber-Metro,

7  and Eber-Connecticut?

8      A      Yes.

9      Q      Okay.  So those three entities have a

10 defense.

11            What is the basis of Alexbay's defense in

12 this lawsuit?

13     A      The judgment that they got that this was

14 fine, that there was -- that this was nothing out of

15 the ordinary.  It was a collection case.  I mean, it

16 was to protect the money that was lent to the

17 company that it didn't go into liquidation.

18     Q      So it -- so the judgment that Alexbay got

19 as a result of the lawsuit it filed in 2012, you are

20 referencing?

21     A      Yes.

22     Q      Okay.  And that that was a valid

23 judgment; correct?

24     A      Yes.

25     Q      That's your position?

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
 1            Okay.
 2     A      Well, you have a judicial determination
 3  in the New York State Supreme Court.
 4     Q      Okay.  Are there any other arguments that
 5  Alexbay has been making in defense of this lawsuit?
 6     A      I'm sure there are.  I can't remember
 7  them at this time.
 8     Q      Is the primary argument that the Alexbay
 9  2012 lawsuit was valid and just?
10     A      That's one of them.
11     Q      One of them.
12            What's the main argument?
13            What's the main defense?
14     A      That the company would have been
15  liquidated and there would be nothing to defend or
16  nothing for anyone if I hadn't stepped up and
17  personally given them the money.
18     Q      That being Eber Wine and Liquor Corp.?
19     A      All of them.
20     Q      All of them.
21            So the argument is that Eber Wine and
22  liquor Corp., Eber Brothers, Eber-Metro, and
23  Eber-Connecticut would have been insolvent unless
24  you loaned money to the entities as alleged in
25  Alexbay 2012?
```

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
1      A      I don't agree with it.

2      Q      I know you don't agree with it.  But this

3  is attacking the conveyance --

4      A      I told you.  I do not agree with it.

5  That's my answer.

6      Q      Well, that's not -- that doesn't answer

7  my question, though.

8             The question is, this paragraph, 56 and

9  57, discuss the conveyance of Eber-Metro shares to

10 Alexbay; correct?

11     A      That's what it says.

12     Q      Okay.  And that was done in the Alexbay

13 2012 lawsuit; correct?

14     A      The shares were -- were conveyed, but you

15 are trying to tie in something that's not there.

16 I'm not -- I don't agree with your reasoning or what

17 you are doing.  So you can assume whatever you want.

18     Q      No, I'm not -- I'm not trying to assume

19 anything.  I'm not trying to assume anything.  But

20 we talked about before --

21     A      You are trying to tie in something that

22 isn't there.  This was done in good faith to keep a

23 company from going into liquidation.

24     Q      Okay.

25     A      And you are trying to tie me into a
```

1  was not made in good faith, what was Alexbay's

2  defense to that claim?

3      A     That it wasn't true.

4      Q     Was it that the Alexbay lawsuit was in

5  good faith?

6            Was --

7      A     Yes.  It was -- it was to prevent -- to

8  prevent liquidation of the company.

9      Q     Understood.

10     A     If that happened, then you wouldn't have

11 you or your insurance company or anyone.

12     Q     Understood.

13     A     It would be liquidated.  There wouldn't

14 be any Eber-Connecticut.

15     Q     Understood.  So let's look at what's been

16 marked Exhibit 7.

17     A     Exhibit 7?

18     Q     Uh-huh.

19           Then you look at this document, are you

20 aware that a third complaint had been filed in the

21 Kleeberg lawsuit?

22     A     Yes.

23     Q     Okay.  Now, have you looked at the third

24 amended complaint in the Kleeberg lawsuit before?

25     A     I don't remember it but I've looked at

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

| 1 | DEPOSITION ERRATA SHEET |
|---|---|

2

3  Page No. _16_ Line No. _7_ Change to: _I am_

4  _President of Eber-Metro_

5  Reason for change: _____

6  Page No. _25_ Line No. _3+4_ Change to: _I can't_

7  _give you an exact date_

8  Reason for change: _____

9  Page No. _26_ Line No. _17_ Change to: _Yes. Alexbay_

10  _and Metro_

11  Reason for change: _____

12  Page No. _28_ Line No. _6_ Change to: _It's a_

13  _determination of commercial_

14  Reason for change: _____

15  Page No. _38_ Line No. _16_ Change to: _been May_

16  _of 2012_

17  Reason for change: _____

18  Page No. _62_ Line No. _19_ Change to: _Yes, I paid._

19  _____

20  Reason for change: _____

21

22

23  SIGNATURE: _Lester Eber_       DATE: _9/16/19_

24  NAME:  LESTER EBER

25

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

1          DEPOSITION ERRATA SHEET

2    Page No. _106_ Line No. _7_    Change to: Yes, Eber-

3    Metro LLC was a different company than Eber Metro Inc.

4    Reason for change: _____

5    Page No. _106_ Line No. _21_   Change to: Offshoot from

6    Slocum. It is affiliated company _____

7    Reason for change: _____

8    Page No. _____ Line No. _____  Change to: _____

9    _____

10   Reason for change: _____

11   Page No. _____ Line No. _____  Change to: _____

12   _____

13   Reason for change: _____

14   Page No. _____ Line No. _____  Change to: _____

15   _____

16   Reason for change: _____

17   Page No. _____ Line No. _____  Change to: _____

18   _____

19   Reason for change: _____

20

21

22

23   SIGNATURE: _Lester Eber_     DATE: _9/16/19_

24   NAME:   LESTER EBER

25

ALEXBAY LLC vs QBE INSURANCE CORPORATION
Lester Eber on 08/06/2019

```
 1                    J U R A T

 2

 3        I have read the foregoing 179 pages and hereby

 4   acknowledge the same to be a true and correct record

 5   of the testimony.

 6

 7

 8

 9        _____

10                  LESTER EBER

11

12   Subscribed and sworn to

13   Lester Eber                        .

14   Before me this 9th day of September          ,

15   2019.

16

17

18

19

20   _____

21   Notary Public

22   My Commission Expires: 4|18|2023

23        KAREN E. KEEGAN
            NOTARY PUBLIC-STATE OF NEW YORK
24             No. 01KE6239535
            Qualified in Suffolk County
25       My Commission Expires 04-18-2023
```