## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEXBAY LLC,
    *Plaintiff*,

    v.                                         No. 3:18-cv-00423 (VAB)

QBE INSURANCE CORPORATION,
    *Defendant.*

### RULING AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Alexbay LLC ("Alexbay" or "Plaintiff") has sued QBE Insurance Corporation ("QBE" or "Defendant") for QBE's refusal to provide insurance coverage for a lawsuit filed against Alexbay, *Kleeberg, et al v. Eber, et al*., C.A. 1:16-cv-09517-LAK ("2016 Kleeberg Lawsuit"). QBE claims that the 2016 Kleeberg Lawsuit fell within exclusion provisions of the relevant insurance policy.

Both Alexbay and QBE have filed motions of summary judgment. Mot. for Summ. J., ECF No. 40, 45 (Oct. 11, 2019) ("Pl.'s Mot. Summ. J."); Mot. for Summ. J., ECF No. 43. (Oct. 15, 2019) ("Def.'s Mot. Summ. J.").

For the following reasons, Alexbay's motion for summary judgment is **DENIED** and QBE's motion for summary judgment is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Around March 31, 2016, Alexbay purchased an insurance policy from QBE, covering "Directors & Officer and Entity Liability, Employment Liability and Fiduciary Liability" ("Insurance Policy"). Pl.'s Local Rule 56(a)(1) Statement of Facts ¶ 1, ECF No. 41 (Oct. 11, 2019) ("Pl.'s SMF"); Def.'s Local Rule 56(a)(2) Statement of Facts ¶ 1, ECF No. 44

1

("Def.'s Opp'n SMF") (objecting to Plaintiff's statement that Alexbay "purchased" the policy, asserting that "there are no facts in the record establish[ing] the actual date of purchase.") The coverage period for the Insurance Policy was March 31, 2016 to March 31, 2017. Pl.'s SMF ¶ 2; Def.'s Local Rule 56(a)(1) Statement of Undisputed Facts ¶ 65, ECF No. 43-2 (Oct. 15, 2019) ("Def.'s SMF").

The liability coverage of the Insurance Policy "applies only to claims first made against the Insureds during the policy period." Def.'s SMF ¶ 66. The Insurance Policy also stated:

> With respect to any **Claim** under any **Liability Coverage Part**, the Insurer shall have the right and duty to defend any Claim, unless otherwise specifically stated in a particular **Liability Coverage Part**. The Insurer shall have such right and duty to defend even if any of the allegations in such Claim are groundless, false or fraudulent.

Pl.'s SMF ¶ 3 (citing Pl.'s Ex. 1)(emphasis in original); Def.'s Opp'n SMF ¶ 3 (noting that "some of the words [*sic*] some of the language cited above lacks bold formatting contained in the insurance policy."). The definition of claim in the Insurance Policy included "a civil proceeding evidenced by the service of a complaint." Pl.'s SMF ¶ 4.

Under the Insurance Policy provisions, related claims "shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made." Pl.'s SMF ¶ 12 (citing Pl.'s Ex. 3); Def.'s Opp'n SMF ¶ 12 (noting that this language is contained in Pl.'s Ex. 3.). The Insurance Policy further defined a "related claim" as "all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstance or **Wrongful Acts**." Pl.'s SMF ¶ 10 (citing Pl.'s Ex. 1) (emphasis in original). "Wrongful Acts" are defined in part as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed,

attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as

such; or (b) by a **Company**." Pl.'s SMF ¶ 11 (citing Pl.'s Ex. 1) (emphasis in original).

The Specific Litigation Exclusion clause of the Insurance Policy stated:

> No coverage shall be provided for any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of or resulting from any notice, litigation, investigation, prosecution, adjudication, or proceeding described below ("Litigation").
>
> All matters identified on AIG Loss Run Report Dated March 2, 2016; PBGC complaint filed against Eber Bros. Case 6:15-cv-06283.

Pl.'s SMF ¶ 7 (citing Pl.'s Ex. 3) (emphasis in original). The AIG Loss Report Dated March 2,

2016 from the Specific Litigation Exclusion clause included two lawsuits filed by the law firm

Harris Beach, PLLC. Pl.'s SMF ¶ 8; Def.'s SMF ¶ 67.

In order to determine whether either of the two relevant exclusions to the Insurance

Policy apply, background on the various parties and lawsuits leading up to this lawsuit is

necessary.

<u>Relevant Entities</u>

Allen Eber "created" Eber Bros. & Co. Def.'s SMF ¶ 1. Eber Bros. & Co "owned all of

the Eber Brother entities, including Eber Bros. Wine & Liquor Corp., which owned Eber Bros.

Wine & Liquor Metro, Inc." *Id.* ¶ 2.

Allen Eber "created a trust to hold and manage the family business." *Id.* ¶ 3. Lester Eber

"owned one third of the trust while the remainder was owned by his two sisters, who have since

died and left their interests to their children." *Id.* ¶ 4.

"In December 2011, Lester Eber formed Alexbay." *Id.* ¶ 5. Lester Eber is its "sole

member, officer, director and employee." *Id.*

<u>2011 Harris Beach Lawsuit</u>

On September 22, 2011, Harris Beach, PLLC ("Harris Beach") "filed suit against Eber Bros. Wine & Liquor Corp. in New York Supreme Court for Monroe County to collect unpaid fees, approximately $700,000, for Harris Beach's representation of Eber Bros. Wine & Liquor Corp. in a prior lawsuit." ("2011 Harris Beach Lawsuit"). *Id.* ¶ 6. Harris Beach "asserted [four] claims against Eber Bros. Wine & Liquor Corp.: (1) breach of contract, (2) account stated, (3) quantum meruit, and (4) unjust enrichment." *Id*. ¶ 7.

The court "entered a judgment against Eber Bros. [Wine & Liquor Corp.] and in favor of Harris Beach for more than [$1 million]." Pl.'s SMF ¶ 23. "In early 2014, Harris Beach obtained a judgment, which was later vacated." Def.'s SMF ¶ 8.

<u>2012 Alexbay Lawsuit</u>

On February 21, 2012, Alexbay filed a lawsuit in New York State Court against Eber Bros. Wine & Liquor Corp., Southern Wine & Spirits of America, Inc., Eber Bros. Wine & Liquor Metro, Inc., and John Does 1-10 ("2012 Alexbay Lawsuit") to "protect Lester Eber's personal investments." *Id.* ¶ 9, 16; Pl.'s SMF ¶ 14 (citing Pl.'s Ex. 2).

Alexbay alleges that this lawsuit "arose from Alexbay's requested judicial determination of the commercial reasonableness of accepting collateral to satisfy unpaid debts." Pl.'s SMF ¶ 15 (citing Pl.'s Ex. 2, Ex. B ¶ 1). QBE denies that the 2012 Alexbay Lawsuit "arose from" Alexbay's requested judicial determination but admits that the 2012 Alexbay Lawsuit alleged that Alexbay was seeking a determination of commercial reasonableness regarding the accepting of certain collateral. Def.'s Opp'n SMF ¶ 15.

Eber Bros. Wine & Liquor Corp. became indebted to Lester Eber for more than "[$3.2 million]." Pl.'s SMF ¶ 16. The 2012 Alexbay Lawsuit alleged that "Lester Eber transferred his

rights under the security agreement to Alexbay." *Id.* ¶ 18 (citing Pl.'s Ex. 2, Ex. B at ¶ 5).
Alexbay alleged that "[p]ursuant to a security agreement, Eber Bros. [Wine & Liquor Corp.'s]
indebtedness was secured by a pledge of . . . all of Eber Bros.' [Wine & Liquor Corp.'s] assets,
including Eber Bros.' [Wine & Liquor Corp.'s] ownership interest in [Eber Bros. Wine &
Liquor] Metro[, Inc.], its wholly owned subsidiary." *Id.* ¶ 17 (citing Pl.'s Ex. 2, Ex. B at ¶ 5);
Def.'s SMF ¶ 10.

"The complaint alleged a series of financial transactions leading to Alexbay seeking a
judicial declaration that Alexbay's assumption of certain collateral by Alexbay was
commercially reasonable and in good faith." Def.'s SMF ¶ 11.

Alexbay "requested that the [New York State] [c]ourt determine that it was commercially
reasonable for Alexbay to accept, as the secured creditor, Eber Bros. [Wine & Liquor Corp.'s]
ownership interests in [Eber Bros. Wine & Liquor Metro, Inc.] in full satisfaction of its debt."
Pl.'s SMF ¶ 19; Def.'s SMF ¶ 12. Alexbay "alleged that Eber Bros. Wine & Liquor Metro, Inc.
had no assets other than its 79% interest in Eber-Connecticut, LLC and that the value of that
interest was $3.6 million [] based on transactions involving Eber-Connecticut, LLC." Def's SMF
¶ 13. Alexbay "alleged that Polebridge Bowman, LLC's acquisition of 6% of Eber-Connecticut,
LLC established that the value of one percent of Eber-Connecticut, LLC was worth $58,333.00,
and that after accounting for a loss in value to Eber-Connecticut, LLC, Eber Bros. Wine &
Liquor Metro, Inc.'s 79% ownership interest in Eber-Connecticut, LLC was worth approximately
$3.6 million." *Id.* ¶ 14.

The court ruled that "the proposed transaction was commercially reasonable under the
Uniform Commercial Code." Pl.'s SMF ¶ 20 (citing Pl.'s Ex. 4); Def.'s Opp'n SMF ¶ 20
(objecting to Plaintiff's citation, but admitting that the court entered an order that it was

reasonable to transfer shares of Eber Bros. Wine & Liquor Metro, Inc. to Alexbay). "[I]n June 2013[,] Alexbay obtained the shares of Eber Bros. Wine & Liquor Metro, Inc., which included the controlling interest in Eber-Connecticut, LLC." Def's SMF ¶ 15.

<u>2014 Harris Beach Lawsuit</u>

On December 11, 2014, Harris Beach filed a lawsuit in New York State Court against Eber Bros. Wine & Liquor Corp., Alexbay, Eber Bros. Wine & Liquor Metro, Inc., and Eber-Connecticut, LLC ("2014 Harris Beach Lawsuit"). *Id.* ¶ 17; Pl.'s SMF ¶ 21. This lawsuit "[sought] legal fees allegedly owned by Eber Bros. [Wine & Liquor Corp.]" Pl.'s SMF ¶ 21 (citing Pl.'s Ex. 2, Ex. G at 1); Def.'s Opp'n SMF ¶ 21 (denying Plaintiff's characterization that the lawsuit was commenced to seek legal fees because the complaint in the 2014 Harris Beach Lawsuit "did not expressly seek recovery of its judgment or legal fees.").

The complaint in the 2014 Harris Beach Lawsuit "alleged that Harris Beach represented Eber Bros. [Wine & Liquor Corp.], in a lawsuit, that Eber Bros. [Wine & Liquor Corp.] did not pay its legal bills and, as a result, in 2011, Harris Beach filed a lawsuit against Eber Bros. [Wine & Liquor Corp.] in New York State Court for breach of contract and unjust enrichment arising from those allegedly unpaid legal bills." Pl.'s SMF ¶ 22.

The complaint alleged that the judgment from the 2011 Harris Beach Lawsuit had not been paid. Def.'s SMF ¶ 18.

The complaint further alleged "multiple financial transactions between Lester Eber, Eber Bros. Wine & Liquor Corp. and Eber Bros. Wine & Liquor Metro, Inc. between 2005 and 2011, which were substantially similar to the transactions alleged in the [2012 Alexbay Lawsuit]." Def.'s SMF ¶ 19. "The complaint alleged that in December 2011, only two and a half months after the [2011 Harris Beach Lawsuit] was filed, Lester Eber formed Alexbay and filed the [2012

Alexbay Lawsuit]." *Id.* ¶ 20. It also alleged that "the [2012 Alexbay Lawsuit] misrepresented to the court the value of the Eber Bros. Wine & Liquor Metro, Inc.'s shares." *Id.* ¶ 21.

More specifically, the complaint alleged "that the transactions alleged in the [2012 Alexbay Lawsuit] that were used to determine the value of Eber Bros. Wine & Liquor Metro, Inc., via the value of Eber-Connecticut, LLC, were not arms-length transactions and that Alexbay did not advise the court in the [2012 Alexbay Lawsuit] of other transactions that would indicate the value of Eber Bros. Wine & Liquor Metro, Inc." *Id.* ¶ 22.  The complaint alleged that "the Polebridge Bowman Partners, LLC's acquisition of part of Eber-Connecticut, LLC was not a true arms' length transaction because its sole member and manager was Lester Eber's attorney." *Id.* ¶ 23. The complaint further alleged that "the transfer of Eber Bros. Wine & Liquor Corp.'s interest in Eber Bros. Wine & Liquor Metro, Inc., and its ownership in Eber-Connecticut, LLC, to Alexbay rendered Eber Bros. Wine & Liquor Corp. insolvent." *Id.* ¶ 24.

The complaint set forth four causes of action under New York Debtor and Creditor Law:

> claiming that the conveyance of Eber Bros. Wine & Liquor Metro, Inc.'s shares to Alexbay:
>
> (1) was fraudulent because the conveyance was not made in good faith and was not made for a fair equivalent value,
>
> (2) was fraudulent because the conveyance was made without fair consideration and made when Eber Bros. Wine & Liquor Corp. was a defendant in an action for money damages,
>
> (3) was fraudulent and done with the actual intent to hinder, delay and defraud its creditors, and
>
> (4) that Harris Beach was entitled to fees because of fraudulent conveyance.

*Id.* ¶ 25.

Alexbay alleges that Harris Beach filed the 2014 Harris Beach lawsuit "to collect on the judgment entered in the 2011 Lawsuit against Eber Bros. [Wine & Liquor Corp.], asserting four claims based upon New York Debtor and Creditor Law." Pl.'s SMF ¶ 24. QBE denies this assertion in part, alleging:

> The Harris Beach Lawsuit asserted four claims under New York Debtor and Creditor Law alleging that the conveyance made as a result of the [2012 Alexbay Lawsuit] was a fraudulent[t] conveyance and Harris Beach sought multiple remedies including a declaration that the transfer of shares of a declaration that the transfer of shares of Eber Bros. Wine & Liquor Metro[, Inc.] was fraudulent, an order setting aside the conveyance, and restraining the Eber-Connecticut shares, among others.

Def.'s Opp'n SMF ¶ 24 (citing Pl.'s Ex. 2, Ex. G).

Alexbay defended this lawsuit by asserting that the 2012 Alexbay Lawsuit "was proper and that a valid judgment was issued in that case." Def.'s SMF ¶ 26.

<u>2015 PBGC Lawsuit</u>

"On May 11, 2015, the Pension Benefit Guaranty Corporation brought suit against Eber Bros. Wine & Liquor Corp. seeking an order terminating its retirement plan" ("2015 PBGC Lawsuit"). Def.'s SMF ¶ 27. The 2015 PBGC Lawsuit implicated "Alexbay, Eber Bros[.] Wine & Liquor Metro, Inc., and Eber-Connecticut, LLC" due to their potential liability under ERISA law. *Id.* ¶ 28.

<u>Harris Beach Settlement Conference</u>

On January 19, 2015, Eber Bros. Wine & Liquor Corp., Eber Bros. Wine & Liquor Metro, Inc., Eber-Connecticut, LLC, and Alexbay sent a letter regarding the 2011 Harris Beach Lawsuit and the 2014 Harris Beach Lawsuit to the New York Supreme Court. *Id.* ¶ 29. "The letter addressed the court order vacating the judgment against Eber Bros. Wine & Liquor Corp. in the [2011 Harris Beach Lawsuit], motions to disqualify counsel in the [2014 Harris Beach

Lawsuit], Harris Beach's discussions with the PBGC about the alleged meritless fraudulent conveyance claims, and how the court in the [2012 Alexbay Lawsuit] approved the commercial reasonableness of the Alexbay transaction." *Id.* ¶ 30. The 2011 Harris Beach Lawsuit and the 2014 Harris Beach Lawsuit were settled. *Id.* ¶ 32.

<u>2016 Kleeberg Lawsuit</u>

On December 9, 2016, Alexbay was named as a defendant in a lawsuit filed in the Southern District of New York captioned *Kleeberg, et al. v. Eber, et al.*, C.A. 1:16-cv-09517-LAK ("2016 Kleeberg Lawsuit"). Pl.'s SMF ¶ 5; Def.'s Opp'n SMF ¶ 5 (objecting to the Plaintiff citing the Third Amended Complaint to support this claim rather than the original complaint).

The 2016 Kleeberg Lawsuit, "filed by Daniel Kleeberg, Lisa Stein, and Audrey Hays, alleged 'beneficiaries or contingent remainderman of a combined two-thirds interest in a testamentary trust.'" Pl.'s SMF ¶ 26 (citing Pl.'s Ex. 2 at ¶ 2); Def.'s Opp'n SMF ¶ 26 (denying that the quoted allegations were contained in the original complaint filed in the lawsuit). The named defendants were "Lester Eber, Alexbay, Estate of Elliot W. Gumaer, Jr., and Wendy Eber" and the named nominal defendants were "Eber Bros. [& Co., Inc.], Eber Bros. Wine [&] Liquor [Corp.], [Eber Bros. Wine & Liquor] Metro[, Inc.], Eber-Connecticut, LLC, Eber-Rhode Island, LLC, Eber Bros. Acquisition Corp., Eber-Metro, LLC and Slocum & Sons of Maine, Inc." Pl.'s SMF ¶ 27 (citing Pl.'s Ex. 2 at 1); Def.'s SMF ¶ 33; Def.'s Opp'n SMF ¶ 27 (asserting that the Third Amended Complaint, rather than the original complaint, identified these defendants.).

The original complaint "alleged that in 2012 Lester Eber transferred all of Eber Bros.['] remaining operating asset, Eber-Connecticut, LLC, to himself and concealed this from

plaintiffs." Def.'s SMF ¶ 34. It alleged that the 2016 Kleeberg Lawsuit "sought damages for defendants' fraudulent concealment of Lester Eber's self-dealing." *Id.* ¶ 35. The complaint alleged that "Alexbay 'brought a sham, uncontested lawsuit in order to obtain uncontested judicial approval of Eber W&L's [Eber Bros. Wine & Liquor Corp.'s] shares in Eber Metro [Eber Bros. Wine & Liquor Metro, Inc.] to Alexbay – and with them, the controlling interest in Eber-Conn d/b/a Slocum & Sons [Eber-Connecticut, LLC].'" *Id.* ¶ 36 (alterations in original).

The complaint "made allegations regarding the [2012 Alexbay Lawsuit], the financial transaction that formed the basis of the [2012 Alexbay Lawsuit], and attached a copy of that complaint." *Id.* ¶ 37.

The original complaint alleged that the "plaintiffs first learned about Eber-Connecticut, LLC's transfer, via Eber Bros. Wine & Liquor Metro, Inc., to Alexbay when they learned about the [2014 Harris Beach Lawsuit]." *Id.* ¶ 38. A copy of the 2014 Harris Beach Lawsuit was attached to the complaint. *Id.* ¶ 39. The complaint:

> [A]lleged that the [2014 Harris Beach Lawsuit's] "detailed allegations support [*sic*] the conclusion that the transfer of [Eber-Connecticut] to Lester [Eber] was a fraudulent conveyance and that the 2012 Action [Alexbay 2012] attempted to rubber stamp the fraudulent conveyance. But the [2012 Alexbay Lawsuit] withheld from the court material facts indicating that [Eber-Connecticut, LLC] was worth far more than the amount of the debt that was supposedly owed to Lester [Eber]."

*Id.* ¶ 40. The complaint alleged "additional facts indicate that the [Eber-Connecticut, LLC] transfer was fraudulent. . . ." and "explicitly incorporated allegations in paragraphs 16-60 from the [2014 Harris Beach Lawsuit's] complaint." *Id.* ¶ 41 – 42.

The original complaint set out four claims against the defendant:

(1) breach of fiduciary duty predicated on the diversion of corporate assets by

transferring assets to Alexbay;

(2) fraudulent concealment regarding not informing Plaintiffs about the [2012 Alexbay Lawsuit;

(3) aiding and abetting breach of fiduciary duty against Alexbay for the [2012 Alexbay Lawsuit]; and

(4) for an accounting of the trust's assets.

*Id.* ¶ 43.

"On March 10, 2017, defendants Lester Eber, Alexbay, Eber Bros. & Co., Inc., Eber Bros. Wine & Liquor Corp., Eber Bros. Wine & Liquor Metro, Inc., Eber-Connecticut, LLC and Wendy Eber answered the original complaint." *Id.* ¶ 44.

"On June 18, 2019, plaintiffs filed their third amended complaint." *Id.* ¶ 45. The third amended complaint "alleged that the Polebridge Bowman Partners, LLC transaction that was used to value Eber Bros. Wine & Liquor Metro, Inc. where it purchased six percent of Eber-Connecticut, LLC was a 'roundtrip transaction with no real economic substance; in other words, a sham.'" *Id.* ¶ 46. The third amended complaint also "contained multiple allegations about what the [2012 Alexbay Lawsuit] alleged and its resolution." *Id.* ¶ 47. It "contained multiple allegations regarding alternative bases for estimating the value of Eber-Connecticut, LLC and how this information was not disclosed in the [2012 Alexbay Lawsuits]." *Id.* ¶ 48. And it "contained multiple details about the transfer of Eber Bros. Wine & Liquor Metro, Inc. to Alexbay and many of the financial transactions that were the basis for the [2012 Alexbay Lawsuit]." *Id.* ¶ 49.

The third amended complaint "again alleged that plaintiffs first learned about the transfer of Eber-Connecticut, LLC, via Eber Bros. Wine & Liquor Metro, Inc. to Alexbay when they learned about the [2014 Harris Beach Lawsuit]" and attached as an exhibit a copy of the 2014

Harris Beach Lawsuit. *Id.* ¶ 50 – 51. It "reiterated [that] the [2014 Harris Beach lawsuit's]

'detailed allegations support the conclusion that the transfer of [Eber-Connecticut, LLC] to

Lester [Eber] was a fraudulent conveyance and that the Foreclosure Action [2012 Alexbay

Lawsuit] attempted to rubber stamp the fraudulent conveyance. But the [2012 Alexbay Lawsuit]

withheld from the court material facts indicating the [Eber-Connecticut, LLC] was worth far

more than the amount of the debt that was supposedly owed to Lester [Eber].'" *Id.* ¶ 52 (third

and seventh alterations in original). The third amended complaint "explicitly incorporated

paragraphs 16-60 from the [2014 Harris Beach lawsuit's] complaint." *Id.* ¶ 53.

"The first count of the third amended complaint was for breach of fiduciary duty for

multiple acts of alleged misconduct, primarily including conduct related to the [2012 Alexbay

Lawsuit]." *Id.* ¶ 54; Pl.'s Local Rule 56(a)(2) Statement of Facts ¶ 54, ECF No. 47 (Nov. 5,

2019) ("Pl.'s Opp'n SMF") (objecting to Defendant's use of the word "primarily."). "The second

count alleged breached of fiduciary duty based on a faithless servant." Def.'s SMF ¶ 55. "The

third count alleged unjust enrichment." *Id.* ¶ 56. "The fourth count sought to set aside [seven]

unlawful transactions, many of which were the basis of the [2012 Alexbay Lawsuit]." *Id.* ¶ 57;

Pl.'s Opp'n SMF ¶ 57 (objecting to Defendant's use of the words "unlawful" and "many."). "The

fifth count demanded new elections for Eber Bros. & Co. and Eber Bros. Wine & Liquor Corp."

Def.'s SMF ¶ 58. "The sixth count sought a declaratory judgment that Lester Eber delayed and

interfered with Plaintiff's ability to establish title to Eber Bros. & Co.'s shares and that he now

must take all steps to enable Plaintiffs to establish title and exercis[e] their legal rights." *Id.* ¶ 59.

"The seventh count asserted a claim for fraudulent concealment primarily for failing to disclose

the [2012 Alexbay Lawsuit] and the transfer of the shares in Eber Bros. Wine & Liquor Metro[,

Inc.]." *Id.* ¶ 60. "The eighth count asserted a claim for aiding and abetting breach of fiduciary

duty and fraudulent concealment." *Id.* ¶ 61. "The ninth count sought an accounting of profits for all entities, including Alexbay." *Id.* ¶ 62. "The tenth count sought common law indemnification." *Id.* ¶ 63.

As detailed above, the 2016 Kleeberg Lawsuit complaint was amended "multiple times," and currently asserts the following causes of action:

(1) breach of fiduciary duty – improper transactions;

(2) breach of fiduciary duty – acting as faithless servants;

(3) unjust enrichment;

(4) to set aside and enjoin various transactions pursuant to B.S.C. § 720;

(5) for new corporate elections pursuant to B.S.C. § 619;

(6) a declaration of the parties' rights and lawfulness of certain actions;

(7) fraudulent concealment;

(8) aiding and abetting breach of fiduciary duty and fraudulent concealment;

(9) an accounting; and

(10)    common law indemnification.

Pl.'s SMF ¶ 28 (citing Pl.'s Ex. 2); Def.'s Opp'n SMF ¶ 27 (asserting that the Third Amended Complaint, rather than the original complaint, identified these defendants.).

Alexbay defended the 2016 Kleeberg Lawsuit by asserting that the 2012 Alexbay Lawsuit was proper and that a valid judgment was issued in that case. Def.'s SMF ¶ 64; Pl.'s Opp'n SMF ¶ 64 (objecting to Defendant's insinuation that it asserted a single defense rather than numerous defenses to the 2016 Kleeberg Lawsuit.).

<u>The Insurance Policy Dispute</u>

On February 14, 2017, QBE denied Alexbay's request for insurance coverage for the 2016 Kleeberg Lawsuit. Pl.'s SMF ¶ 6; Def.'s SMF ¶ 67. QBE relied in part on the Specific Litigation Exclusion clause in the Insurance Policy to deny Alexbay coverage for the 2016 Kleeberg Lawsuit. Pl.'s SMF ¶ 7. QBE asserted that the 2016 Kleeberg Lawsuit arose from the 2014 Harris Beach lawsuit. *Id.* ¶ 9.  QBE also denied Alexbay coverage for the 2016 Kleeberg Lawsuit in part because it was "a Related Claim that predate[d] the coverage period of the Insurance Policy." *Id.* ¶ 13; Def.'s Opp'n SMF ¶ 13.

### B.  Procedural History

On February 5, 2018, Alexbay filed a complaint in the Superior Court of the State of Connecticut, Judicial District of New Haven, alleging QBE Insurance Corporation "breached its obligations under the Insurance Policy." Notice of Removal, ECF No. 1-1 at 3 (Mar. 9, 2018).

On March 9, 2018, QBE filed a Notice of Removal and brought the case from the Connecticut State Superior Court to this Court. Notice of Removal, ECF No. 1 (Mar. 9, 2018).

On October 11, 2019, Alexbay moved for summary judgment. Pl.'s Mot. Summ. J. Alexbay submitted a Memorandum of Law, Notice of Additional Authority, ECF No. 45 (November 5, 2019)[1], and a Statement of Material Facts with four exhibits, Pl.'s SMF.

On October 15, 2019, QBE moved for summary judgment. Def.'s Mot. Summ. J. QBE submitted a Memorandum of Law, Def.'s Mot. Summ. J., ECF No. 43-1 (October 15, 2019); a

---

[1] Alexbay accidentally filed an additional copy of their motion for summary judgment rather than their memorandum in support of summary judgment when they initially filed on October 11, 2019. Alexbay corrected the error on November 5, 2019 in a notice of additional authority.

Statement of Material Facts, Def.'s SMF; and eighteen exhibits, Def.'s Mot. Summ. J., ECF No. 43-3 – 43-20 (Oct. 15, 2019).

On November 1, 2019, QBE filed a memorandum in opposition to Alexbay's motion for summary judgment, Def.'s Mem. in Opp'n, ECF No. 44 (Nov. 1, 2019), and a statement of facts in opposition to summary judgment, Def.'s Opp'n SMF, with eight exhibits, Def.'s Mem. in Opp'n, ECF No. 44-2 – 44-9 (Nov.1, 2019).

On November 5, 2019, Alexbay filed a memorandum in opposition to Defendant's motion for summary judgment Pl.'s Mem. in Opp'n, ECF No. 46 (Nov. 5, 2019), and a statement of facts in opposition to summary judgment with one exhibit, Pl.'s Opp'n SMF.

On November 19, 2019, QBE filed a reply to Alexbay's memorandum in opposition to QBE's motion for summary judgment. Def.'s Reply to Pl.'s Mem. in Opp'n, ECF No 48 (Nov. 19, 2019).

On September 8, 2020, The Court held oral arguments on the motions for summary judgment. Minute Entry, ECF No. 53 (Sept. 8, 2020).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d

Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

"[I]nsurance policies are construed and enforced under principles of contract law." *Discuillo v. Allstate Ins. Co.*, No. 3:17-CV-234 (KAD), 2019 WL 499255, at *2 (D. Conn. Feb. 8, 2019). Their "language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the

claim." *Liberty Mut. Ins. Co. v. Lone Star Indus.*, 290 Conn. 767, 795 (2009) (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)).

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . . In accordance with those principles, the determinative question is the intent of the parties, that is, what coverage the . . . insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy.

*Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372–73 (2008) (internal quotation marks and alterations omitted) (quoting *Conn. Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008)). Courts should construe insurance contracts as lay people would. *Kim v. State Farm Fire & Cas. Ins. Co.*, No. 17-2304-CV, 2018 WL 4847195, at *1 (2d Cir. Oct. 5, 2018) (summary order) (citing *Vt. Mut. Ins. Co. v. Walukiewwicz*, 290 Conn. 582, 592 (2009) (internal quotation marks and citations omitted)).

> [W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted.... [T]his rule of construction favorable to the insured extends to exclusion clauses.... When construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim.... While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies.

*R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*, 333 Conn. 343, 365 (2019) (quoting *Nationwide Mut. Ins. Co.* v. *Pasiak*, 327 Conn. 225, 238–39 (2017)) (internal quotation marks omitted).

"[S]ummary judgment is appropriate to determine whether an insurer owes a duty to defend on the basis of an insurance contract because construction of the contract presents a question of law for the court." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn.

2010); *see also Misiti, LLC v. Travelers Prop. Cas. Co. of America*, 308 Conn. 146, 154

(2013) ("[W]ith respect to an insurer's duty to defend a claim brought against the insured, '[t]he

question of whether an insurer has a duty to defend its insured is purely a question of law, which

is to be determined by comparing the allegations of [the] complaint with the terms of

the insurance policy.'" (second and third alterations in original) (quoting *Wentland v. Am. Equity

Ins. Co.*, 267 Conn. 592, 599 n.7 (2004))).

To determine whether QBE must defend or indemnify Alexbay, the Court will

"compar[e] the allegations of [the] complaint with the terms of the insurance policy." *Id.*; *QSP,

Inc. v. Aetna Cas. and Sur. Co.*, 256 Conn. 343, 354 (2001) (holding that the duty

to defend arises when an injured party brings a claim against the insured, within the policy

coverage); *Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 79 (2d Cir. 1998). Contract

provisions must be construed to determine the "intent of the parties as expressed by the language

of the policy ... viewed in its entirety, and the intent of the parties for entering it derived from the

four corners of the policy." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn.

457, 463 (2005) (quoting *QSP, Inc.*, 256 Conn. at 351-52). The language of a contract must be

read to give the words their "natural and ordinary meaning." *Taylor v. Mucci*, 288 Conn. 379,

384 (2008) (internal citations omitted).

An insurer's duty to indemnify an insured is narrower than its duty to defend. *DaCruz v.

State Farm Fire and Cas. Co.*, 268 Conn. 675, 685-87  (2004). The duty to indemnify depends

on the facts established at trial and the judgment entered in the case. *Id.* Therefore, if the Court

determines that an insurer has no duty to defend an insured, the insurer also has no duty

to indemnify the insured. *Mara*, 699 F. Supp. 2d at 460.

Alexbay moves for summary judgment on its single claim of breach contract and argues that the 2016 Kleeberg Lawsuit is "not 'based upon, arising out of or resulting from" the 2014 Harris Beach Lawsuit. Pl.'s Mot. Summ. J. 8. Alexbay argues that although the 2016 Kleeberg Lawsuit refers to the 2014 Harris Beach Lawsuit, the two lawsuits have "different [ ] parties, causes of action, allegations, defenses, law and requested relief." *Id.*

QBE also moves for summary judgment, and argues that the 2016 Kleeberg Lawsuit is excluded from coverage under the Insurance Policy because (1) the lawsuit is "based on, aris[es] out of or result[s] from" the 2011 and 2014 Harris Beach Lawsuits explicitly excluded in the Specific Litigation Exclusions clause and/or (2) the lawsuit is a "related claim" to the 2014 Harris Beach Lawsuit which was initiated outside the policy coverage period of March 31, 2016 to March 31, 2017. Def.'s Mot. Summ. J. 18, 21 – 22.

In addressing this breach of contract claim, the Court will address the scope and applicability of the Insurance Policy's two relevant exclusion provisions in turn.

A.      The Insurance Policy's Specific Litigation Exclusion

Under Connecticut law, "[t]he meaning of 'arising out of' in the context of insurance policies was already well established." *Nationwide Mut. Ins. Co. v. Pasiak*, 327 Conn. at 244. In the automobile accident context, to show that an incident "aris[es] out of" another, "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." *Hogle v. Hogle*, 167 Conn. 572, 577 (1975). "Connecticut's reviewing courts subsequently have applied this definition of "arising out of" to insurance policies beyond the context of motor vehicle exclusions." *Misiti, LLC*, 308 Conn. at 158. "The phrase arising out of

is usually interpreted as indicat[ing] a causal connection." *QSP, Inc. v. Aetna Cas. & Sur. Co.,*

256 Conn. 343, 374 (2001) (internal quotation marks omitted) (alteration in original) (quoting

*Coregis Ins. Co. v. Am. Health Foundation,* 241 F.3d 123 (2d Cir. 2001)).

The Insurance Policy's Specific Litigation Exclusion clause states:

> No coverage shall be provided for any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of or resulting from any notice, litigation, investigation, prosecution, adjudication, or proceeding described below ("Litigation").
>
> All matters identified on AIG Loss Run Report Dated 2, 2016; PBGC complaint filed against Eber Bros. Case 6:15-cv-06283.

Pl.'s SMF ¶ 7; Def.'s SMF ¶ 66. The AIG Loss Run Report Dated March 2, 2016 included the

2011 and 2014 Harris Beach Lawsuits, but not the 2012 Alexbay Lawsuit. Pl.'s SMF¶ 8; Def.'s

SMF ¶ 67. QBE denied coverage to Alexbay for the 2016 Kleeberg Lawsuit, reasoning that the

2016 Kleeberg Lawsuit was "based on, arising out of or resulting from" the 2011 and 2014

Harris Beach Lawsuits. Pl.'s SMF ¶ 7 – 9.

In the 2011 Harris Beach Lawsuit, Harris Beach, PLLC sued Eber Bros. Wine & Liquor

Corp. in New York state court "to collect unpaid legal fees [ ] for Harris Beach's representation

of Eber Bros. Wine & Liquor Corp. in a prior lawsuit." Def.'s SMF ¶ 6; Pl.'s Opp'n SMF ¶ 6. In

the 2014 Harris Beach Lawsuit, Harris Beach sued Eber Bros. Wine & Liquor Corp., Alexbay,

Eber Bros. Wine & Liquor Metro, Inc., and Eber-Connecticut, LLC over the conveyance of Eber

Bros. Wine & Liquor Metro, Inc.'s shares to Alexbay. Def's SMF ¶ 17; Pl.'s SMF ¶ 21. This

conveyance had been the subject of the 2012 Alexbay Lawsuit, in which Alexbay sought judicial

determination of the commercial reasonableness of accepting collateral to satisfy unpaid debts.

Pl.'s SMF ¶ 15; Def.'s SMF ¶ 9.  In the 2015 PBGC Lawsuit, the Pension Benefit Guaranty

Corporation sued Eber Bros. Wine & Liquor Corp. regarding the termination of its retirement

plan. Alexbay and others Eber Bros. entities were later added due to their potential ERISA liability. Def.'s SMF ¶ 28.

The 2016 Kleeberg Lawsuit is a lawsuit against Alexbay, Lester Eber, Elliot W. Gumaer, Jr., Wendy Eber, Eber Bros. & Co., Inc., Eber Bros. Wine & Liquor Corp., Eber Bros. Wine & Liquor Metro, Inc., Eber-Connecticut, LLC, Eber-Rhode Island, LLC, Eber Bros. Acquisition Corp., Eber-Metro, LLC, and Slocum & Sons of Maine, Inc. Pl.'s SMF ¶ 27; Def.'s SMF ¶ 33. The lawsuit also challenged the conveyance of Eber Bros. Wine & Liquor Metro, Inc.'s share to Alexbay as well as the subsequent 2012 Alexbay Lawsuit seeking judicial determination of the commercial reasonableness of accepting collateral to satisfy unpaid debts. Def.'s SMF ¶ 36. The original and third amended complaint noted that the plaintiff's in the 2016 Kleeberg Lawsuit learned about the contested conveyance from the 2014 Harris Beach Lawsuit. *Id.* ¶ 38, 50.

QBE argues that "the [2011 Harris Beach Lawsuit], the [2014 Harris Beach Lawsuit], and the [2015 PBGC Lawsuit] are themselves highly related and are based on, arising out of or result from each other." Def.'s Mot. Summ. J. 18. QBE then argues that the 2016 Kleeberg Lawsuit "address[es] the same conduct unequivocally at issue in the [2014 Harris Beach Lawsuit] and in part the [2015] PBGC Lawsuit." *Id.* In QBE's view, the 2016 Kleeberg Lawsuit arose out of the 2014 Harris Beach Lawsuit because the 2014 Harris Beach Lawsuit notified the plaintiffs in the 2016 Kleeberg Lawsuit and both lawsuits challenged the conveyance at issue in the 2012 Alexbay Lawsuit. *Id.*

As stated above, the language "arising out of" indicates a causal connection. *QSP, Inc.,* 256 Conn. at 374. The plain language of "based upon" and "resulting from" also suggests causation. *See Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.,* 312 Conn. 714, 740 (2014) ("[U]nambiguous terms are to be given their plain and ordinary meaning.") (alteration in

original). Thus, the 2016 Kleeberg Lawsuit is properly excluded from the Insurance Policy's coverage, if there is a causal connection between the 2011 Harris Beach Lawsuit and the 2014 Harris Beach Lawsuit or the 2015 PBGC Lawsuit (explicitly excluded in the Specific Litigation Exclusion) and the 2016 Kleeberg Lawsuit.

Although the 2016 Kleeberg Lawsuit refers to and incorporates aspects of the 2014 Harris Beach Lawsuit, the 2016 Kleeberg Lawsuit does not contest or challenge anything that occurred in the 2014 Harris Beach Lawsuit. But that degree of nexus may not be required for this policy language's exclusion to apply. The Connecticut Supreme Court has recognized that the meaning of "arising out of" also encompasses the words "in connection with," and relying on "Webster's Third New International Dictionary[,] define[d] 'connected' in relevant part as 'joined or linked together' and as 'having the parts or elements logically related . . . .'" *Misiti, LLC,* 308 Conn. at 159. Both the 2014 and the 2016 Kleeberg Lawsuit challenge the conveyance of Eber Bros. Wine & Liquor Metro, Inc. shares to Alexbay and the 2012 Alexbay Lawsuit that addressed that conveyance. These lawsuits are both "based upon, aris[e] out of and result[] from" the conveyance and the 2012 Alexbay Lawsuit. The 2012 Alexbay Lawsuit, however, is not included in the Specific Litigation Exclusion clause of the Insurance Policy.

QBE does not specifically allege that the 2016 Kleeberg Lawsuit "[arose] out of" the 2011 Harris Beach Lawsuit or the 2015 PBGC Lawsuit, but there also may be a lack of clear causal connection between those lawsuits and the 2016 Kleeberg Lawsuit. The 2015 PBGC Lawsuit addressed the potential ERISA issues arising from the conveyance of shares to Alexbay. As does the 2014 Harris Beach Lawsuit, the 2015 PBGC Lawsuit arose from the 2012 Alexbay Lawsuit.

The 2011 Harris Beach Lawsuit sought unpaid legal fees from Harris Beach's representation of Eber Bros. Wine & Liquor Corp. In 2014, Harris Beach obtained a judgment in this lawsuit, an award later vacated. In its statement of facts, QBE highlights that Alexbay's formation and the 2012 Alexbay Lawsuit occurred "only two and a half months after the [2011 Harris Beach] Lawsuit was filed." Def.'s SMF ¶ 20.  While there may be a connection between the 2011 and 2012 lawsuits, a causal connection between the 2016 Kleeberg Lawsuit and the 2011 Harris Beach Lawsuit due to the proximity of the 2012 Alexbay Lawsuit to the 2011 Harris Beach Lawsuit may be too tenuous to justify denying coverage under the Specific Litigation Exclusion provision.  *R.T. Vanderbilt Co.,* 333 Conn. at 365 ("When construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim.").

In any event, because the Insurance Policy's "Related Claim" Exclusion applies to result in the denial of coverage, regardless of how the Specific Litigation Exclusion is construed, the Court need not and does not resolve the issue of whether the 2016 Kleeberg Lawsuit falls within the scope of the Specific Litigation Exclusion.

B.    The Insurance Policy's Related Claim Exclusion

> [A] "'[c]laims-made policy'" is "an insurance policy or an endorsement to an insurance policy that covers liability for injury or damage that the insured is legally obligated to pay (including injury or damage occurring prior to the effective date of the policy, but subsequent to the retroactive date, if any), arising out of incidents, acts or omissions, as long as the claim is first made during the policy period or any extended reporting period."

*Nat'l Waste Assocs., LLC v. Travelers Cas. & Sur. Co. of Am.,* 51 Conn. Supp. 369, 374 (Super. Ct. 2008), *aff'd,* 294 Conn. 511 (2010) (quoting Conn. Agencies Regs. 38a-327-1(a)) (alteration in original).

> [A] claims made policy is one in which coverage is conditioned on a claim having been asserted against the insured during the policy period.... A claims made and reported policy requires that the claim against the insured, and the report of such claim to its carrier, occur within the same policy period as a precondition to coverage.

*Id.* at 375 (finding an EEOC administrative claim filed prior to the policy period fell within the claim made provision and denial of coverage was appropriate).

> To permit an insured to recover for claims arising from the same facts, circumstances, situations, transactions, events or Wrongful Acts alleged in a pending lawsuit or made the subject of a prior notice given to another insurer would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed.

*Zunenshine v. Exec. Risk Indem., Inc.,* No. 97-cv-5525 (MBM), 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998), *aff'd,* 182 F.3d 902 (2d Cir. 1999) (internal quotation marks and alterations omitted).

Significantly, in contrast to "arising out of" language," "[t]he term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection." *Coregis Ins. Co.*, 241 F.3d at 128; *Boehringer Ingelheim Vetmedica Inc. v. Merial Ltd.*, No. 3-09-cv-212, 2010 WL 174078, at *11 (D. Conn. 2010) (same). "The word 'relation,' in turn, as 'used esp[ecially] in the phrase 'in relation to,' is defined as a 'connection' to or a 'reference' to." *Coregis Ins. Co.*, 241 F.3d at 128 (citing to Webster's Third New International Dictionary at 1916 (1986)); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (recognizing that, in the context of federal pre-emption, the "ordinary meaning" of "relating to" is "broad. . . 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . ") (citing Black's Law Dictionary 1158 (5th ed. 1979)).

This Insurance Policy "applies only to claims first made against the insureds during the policy period." Def.'s SMF ¶ 66. Under the Insurance Policy, Related Claims are "deemed a

single Claim first made during the policy period in which the earliest of such Related Claims was either first made or deemed to have been first made. . .." *Id*. Related Claims are further defined as "all Claims based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances, or Wrongful Acts." *Id*. A wrongful act is defined as:

> (1) Any error, misstatement misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by; (a) an Insured Person in his capacity as such; or (b) by a Company; or
>
> (2) Any other matter claimed against an Insured Person solely by reason of serving in his capacity as such.

*Id.* The 2016 Kleeberg Lawsuit thus must be a "Related Claim" within the meaning of these terms to apply.

As a result, even if the 2016 Kleeberg Lawsuit did not arise out of" the 2014 Harris Beach Lawsuit or was not "based upon" or "resulting from," it, under the Insurance Policy's "Related Claim" Exclusion, a related claim also can be one which is "related, or having common nexus of, facts, circumstances, or Wrongful Acts," a broader definition than the Specific Litigation Exclusion. *Cf. Coregis Ins. Co.* 241 F.3d at 129 ("We find that, regardless of whether coverage for the Lawsuits would constitute a claim 'arising out of' the Companies' insolvency or financial impairment, the ordinary meaning of the broad term 'related to' as used in the Provision is clear and unambiguous in its application to exclude such coverage.").

The 2016 Kleeberg Lawsuit challenged the conveyance of Eber Bros. Wine & Liquor Metro, Inc. shares to Alexbay and the 2012 Alexbay Lawsuit. This is the same "common nexus of, facts [or] circumstances" underlying the 2014 Harris Beach Lawsuit which also contested the conveyance and the subsequent judicial determination of commercial reasonableness. *See* Def.'s SMF ¶ 42 ("[The 2016 Kleeberg Lawsuit] complaint. . .  explicitly incorporated the allegations in

26

paragraphs 16-60 from [the 2014 Harris Beach Lawsuit's] complaint."); *Id.* ¶ 51 – 52 (stating that the third amended complaint in the 2016 Kleeberg Lawsuit attached a copy of the 2014 Harris Beach Lawsuit as an exhibit and reiterated allegations from the lawsuit regarding the conveyance of Eber Bros. Wine & Liquor Metro, Inc. shares to Alexbay and the 2012 Alexbay Lawsuit).

Alexbay argues that the "related to" language is narrower and that common underlying facts are insufficient to satisfy the "related to" requirement in the Insurance Policy. Pl.'s Mot. Summ. J. 12-13 (citing *Nat'l Union Ins. Co. of Pittsburgh  v. Holmes & Graven*, 23 F. Supp. 2d 1057, 1070 (D. Minn. 1998) (finding "certain commonalities—namely, that the underlying acts were those of [one law firm's] attorneys, and were committed in the context of a single commercial venture—they bear no commonality as to the results, or losses, which would be generated by their underlying mistakes, the means by which any such losses would be caused were different, and the losses were not coterminous" ).

But the "common nexus" between the 2014 Harris Beach Lawsuit and the 2016 Kleeberg Lawsuit is the same: the challenged conveyance and the 2012 Alexbay Lawsuit. And the "common nexus of, facts, circumstances, or Wrongful Acts" language and further definition of "Wrongful Acts" in the Insurance Policy's Related Claim Exclusion is broader than the relevant policy language in *National Insurance*. *See Nat'l Union Ins. Co. of Pittsburgh*, 23 F. Supp. 2d at 1069 (quoting relevant policy provision as limiting claims "'subsequently reported to the Company **and which arises out of the same or related acts, errors or omissions as form the basis of the claim first made against the insured**") (emphasis in original). Indeed, the policy language in *National Insurance* is more closely related to QBE's Specific Litigation Exclusion than the Insurance Policy's Related Claim Exclusion. *See* Def.'s SMF ¶ 66 (quoting QBE's

Specific Litigation Exclusion language regarding not covering claims "based upon, arising out of or resulting from any notice, litigation, investigation, prosecution, adjudication, or proceeding described below").

Under the Insurance Policy's "Related Claims" Exclusion, any related claims are to be treated as a single claim with a start date going back to the earliest claim. The 2014 Harris Beach Lawsuit and 2016 Kleeberg Lawsuit are related claims, and thus must be treated as a single claim. The 2014 Harris Beach Lawsuit began on December 11, 2014, before the start of the policy period on March 31, 2016. As a result, because the "Related Claims" Exclusion does not require coverage for claims, including related claims, that occur outside the policy period, QBE is not required to provide coverage to Alexbay for the 2016 Kleeberg Lawsuit and therefore did not breach its obligation under the Insurance Policy.

Accordingly, Alexbay's motion for summary judgment will be denied and QBE's motion for summary judgment will be granted.

## IV.    CONCLUSION

For the foregoing reasons, Alexbay's motion for summary judgment is **DENIED** and QBE's motion for summary judgment is **GRANTED**.

Having determined that QBE is entitled to summary judgment, foreclosing Alexbay's breach of contract claim, the Clerk of Court is respectfully directed to close this case.

SO ORDERED at Bridgeport, Connecticut, this 11th day of September, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE